George A. ANGLE, d/b/a Kansas Refined Helium Company, Appellant,

v.

Martin SACKS, Regional Director of the Seventeenth Region of the National Labor Relations Board, for and on Behalf of the **NATIONAL LABOR RELATIONS BOARD,** Appellee.

No. 9415.

United States Court of Appeals Tenth Circuit.

Aug. 28, 1967.

657

Julius G. Serot, Asst. General Counsel, N. L. R. B., Washington, D. C. (Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marvin Roth, Atty., N. L. R. B., Washington, D. C., on the brief), for appellee.

Before JONES *, SETH and HICKEY, Circuit Judges.

SETH, Circuit Judge.

The appellant, doing business as the Kansas Refined Helium Company, appeals from a temporary injunction granted by the District Court pursuant to section 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j).

The chronology of events leading to the temporary injunction may be summarized as follows: In the summer of 1966, the appellant, hereinafter referred to as the employer, had approximately twenty production and maintenance employees at his liquid helium plant near Otis, Kansas. In June 1966, certain employees contacted a union representative, and a campaign to organize the employees was commenced. In early July 1966, the union petitioned the National Labor Relations Board for a representation election, and in August a hearing was held on the union's petition. Also in the latter part of August, during separate interviews with two employees, the employer inquired regarding union activity, expressed his displeasure with the union, and indicated that union "malcontents" and "agitators" would be discharged.

An election was ordered, but the Regional Director, appellee herein, found that "senior operators" in the plant were supervisors and were not eligible to vote. On September 2, 1966, the union sought review by the Board of the Regional Director's ruling that the senior operators were supervisors.

Thereafter, on September 13, the employer started private interviews with each employee. At the hearing on the petition for a temporary injunction pursuant to section 10(j) of the Act, the employer claimed that the private employee

Marvin J. Martin, Wichita, Kan. (John B. Wooley, and W. Stanley Churchill, Wichita, Kan., on the brief), for appellant.

* Of the Fifth Circuit, by designation.

interviews were undertaken to identify the employees responsible for dissension in the plant. The existence of such dissension had been revealed in three anonymous letters received by the employer during the summer. The employer stated that the representation election, then scheduled for September 28, was "entirely trivial and secondary to the problem" of dissension and unrest in the plant. The testimony of former employees so interviewed indicates that the employer considered the union a "threat" to the helium plant; that he inquired whether the employees had signed union cards and how they planned to vote; that he would discharge any employee who was not "100 per cent" for the employer, and that "there wouldn't be anyone left to vote for the union" and he would never bargain with the union "in three thousand years."

On September 20, the union and the employer received a telegram from the Board advising that the Regional Director's ruling on the supervisory status of the senior operators was amended to permit the senior operators to vote in the forthcoming election, subject to challenge, because the supervisory issue could best be resolved by the challenge procedure. On the same day, September 20, six employees were discharged by the employer, while the remaining employees were given a wage increase. On the next day, September 21, the Regional Director informed the employer that the union had filed charges of unfair labor practices, and that the representation election scheduled for September 28 was postponed indefinitely because of the employer's conduct.

Thereafter, the Board issued a complaint against the employer, alleging violations of sections 8(a) (1) and (3) of the Act. On December 22, 1966, the Regional Director filed a petition for a temporary injunction pursuant to section 10 (j). An adversary hearing on appellee's petition was held in January 1967, and the District Court ordered a temporary injunction on April 5, 1967.

The District Court enjoined the employer from interfering with, restraining, or coercing employees in the exercise of rights guaranteed by section 7 of the Act. The court ordered the employer to reinstate the six employees discharged on September 20, pending a final determination of the issues by the Board, and ordered the employer to tender sufficient transportation costs to permit the six employees and their families to return to work. The court's order does not require payment of backpay, nor did the Board seek backpay. The employer's motion to stay the temporary injunction pending appeal was denied by the District Court on April 24, 1967. We are unable to determine from the record before us whether any of the six discharged employees has accepted reinstatement. The District Court determined that the " * * * clearly foreseeable result of the interrogations, the discharges, and wage increases to the remaining employees was to destroy any employee interest in union representation. Reasonable cause to believe that unfair labor practices have been committed clearly exists."

■ Although the evidence was contradictory, the record contains substantial evidence to support the court's finding that there existed a reasonable cause to believe that unfair labor practices had occurred, and we cannot say that the court's finding is clearly erroneous, or an abuse of discretion occurred in granting the injunction. See Johnston v. J. P. Stevens & Co., 341 F.2d 891 (4th Cir.). A finding of such reasonable cause is an implicit prerequisite for relief under section 10(j). See McLeod v. Compressed Air, Etc. Workers, 292 F.2d 358 (2d Cir.); Note, 45 Texas L.Rev. 358, 360 n. 12 (1966), and cases cited therein. We have heretofore considered section 10(l) cases in Lawrence Typographical Union v. Sperry, 356 F.2d 58 (10th Cir.), and in United Brotherhood of Carpenters v. Sperry, 170 F.2d 863 (10th Cir.).

The appellant argues that a petition for section 10(j) relief should be filed

only in rare emergency situations, and that the Board abused its discretion by seeking section 10(j) relief in the case at bar because the circumstances did not disclose an emergency situation then existing or likely to exist before the issues in controversy could be decided by the Board. Appellant also asserts that the District Court granted relief on the sole basis of reasonable cause to believe that unfair labor practices had occurred, thus failing to establish additional standards or guidelines for granting relief under section 10(j).

■ The statute[1] provides only that the court may grant relief it deems "just and proper" upon filing of a petition by the Board and notice to the respondent. Appellant's contention that the Board's discretion in seeking section 10(j) relief should be limited to rare emergencies is derived from statements of the Board or its personnel shortly after section 10(j) was enacted in 1947. For example, in 1947, General Counsel Denham of the Board said: "I believe it was intended that that section [10(j)] should be used with almost the same restraint that applies to the use of the national emergency injunctions. In other words, the problem has to be a widespread one; it has to be one that has heavy and meaningful repercussions." 24 LRRM 45. However, in view of the Norris-LaGuardia Act, 29 U.S.C. §§ 101–115, which deprived federal courts of jurisdiction to issue injunctions in labor disputes, congressional restoration of jurisdiction to order temporary injunctive relief under section 10(j) should be regarded by the courts as a legislative response designed to reach particular situations. See the 1962 remarks of Chairman McCulloch of the Board, cited in McLeod v. General Electric Co., 366 F.2d 847 (2d Cir.). Relief under section 10(j) may be sought against employers and unions alike.

■ We find nothing in the legislative history of section 10(j) declaring or suggesting that the Board's discretion in seeking section 10(j) relief should be limited to those emergencies endangering the national welfare, or to situations with "heavy and meaningful repercussions," or to situations that have a demonstrably prejudicial impact on the public. The concern of Congress was rather that the purposes of the National Labor Relations Act could be defeated in particular cases by the passage of time:

"*   *   *   the relatively slow procedure of the Board hearing and order, followed many months later by an enforcing decree of the circuit court of appeals, falls short of achieving the desired objectives—the prompt elimination of the obstructions to the free flow of commerce and encouragement of the practice and procedure of free and private collective bargaining. Hence we have provided that the Board, acting in the public interest and not in vindication of purely private rights, may seek injunctive relief in the case of all types of unfair labor practices. *   *   *

*   *   *   *   *   *

"Experience *   *   *   has demonstrated that *   *   *   the Board has not been able in some instances to correct unfair labor practices until after substantial injury has been done. *   *   *   Since the Board's orders are not self-enforcing, it has sometimes been possible for persons violating the act to *accomplish their unlawful objective before being placed under any legal restraint and thereby to make it impossible or not feasible to restore or*

---

1. Section 10(j), 29 U.S.C. § 160(j):
   "(j) The Board shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, *   *   *   for appropri-ate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper."

*preserve the status quo pending litigation.* [Emphasis added].

"In subsection (j) * * * the Board is given additional authority to seek injunctive relief. * * * Thus the Board need not wait if the circumstances call for such relief, until it has held a hearing, issued its order, and petitioned for enforcement of its order." S.Rep. No. 105, 80th Cong., 1st Sess. 8, 27 (1947).

In our view, the foregoing excerpts indicate that Congress imposed no readily identifiable limitation on the *Board's* discretion to *seek* temporary relief under section 10(j); the Board may seek relief if the "circumstances call for such relief."

■■■ We do think, however, that the legislative history indicates a standard in addition to the "probable cause" finding that must be satisfied before a district court grants relief. The circumstances of the case must demonstrate that there exists a probability that the purposes of the Act will be frustrated unless temporary relief is granted. Administration of the Act is vested by Congress in the Board, and when the circumstances of a case create a reasonable apprehension that the efficacy of the Board's final order may be nullified, or the administrative procedures will be rendered meaningless, temporary relief may be granted under section 10(j). Preservation and restoration of the status quo are then appropriate considerations in granting temporary relief pending determination of the issues by the Board. See, e. g., Johnston v. J. P. Stevens & Co., 341 F.2d 891 (4th Cir.); McLeod, on Behalf of National Labor Relations Board v. Compressed Air, Etc. Workers, 292 F.2d 358 (2d Cir.); Rains v. East Tennessee Packing Co., 240 F.Supp. 770 (E.D. Tenn.); Johnston v. Evans, 223 F.Supp. 766 (E.D.N.C.).

■■■ Prescribing standards or guidelines is helpful, but standards are given substance only as they are applied to the facts and circumstances of a particular case. We conclude that the circum-stances of the case at bar were sufficient to raise a reasonable apprehension that the purposes of the Act could be defeated if temporary relief were not granted under section 10(j).

The District Court's analysis of the circumstances, quoted hereafter, reveals that the court did not grant relief on the sole basis that there was reasonable cause to believe that unfair labor practices had occurred, as appellant suggests. The trial court said:

"* * * We think it is appropriate to enjoin any further acts of respondent [appellant] which are of the character reflected in the evidence before the court, for there is no assurance such tactics will not be renewed against other employees if a 'threat' of union success appears.

* * * * * *

"It is clear that the acts described are such as operate predictably to destroy or severely inhibit employee interest in union representation, and activity toward that end. * * * [Appellant's] approach misconceives the purpose of proceedings under Section 10(j), to grant such relief as may be necessary to preclude an employer from ultimately frustrating an enforceable order of the Board protecting employees' rights, which may not issue until months have passed.

* * * * * *

"* * * [A]ny order of the Board will be an empty formality if, when finally issued, respondent [appellant] has succeeded in destroying any employee interest or initiative in union representation and collective bargaining. It may be that he has already done so. *He discharged nearly one-third of the approximately twenty employees at the plant, and has since nearly doubled the size of the staff. There may be no effective union spokesman at the plant, and no residue of the sentiments which gave rise to these difficulties.* When the Board finally resolves the issues before it, the employees then at the plant may not wish to exercise the rights thus secured to

them. If they do not wish to do so, however, it must not be due to the illegal and thus far successful tactics outlined herein. \* \* \* Reinstatement of the illegally discharged employees is the best visible means of rectifying this." [Emphasis added.]

■ The record shows that the finding of the trial court that there existed reasonable cause to believe that an unfair labor practice had occurred was not clearly erroneous, and there was no abuse of discretion in granting temporary relief as the purposes of the Act could be defeated if some temporary relief were not granted. An injunction was thus a "just and proper remedy" under the Act. Injunctive relief is a drastic remedy under any circumstances, but it was here clearly called for under the statute.

■ The District Court's order granting temporary injunctive relief is broad as it enjoins and restrains the employer from interrogating and coercing his employees, or in any way interfering with the employees' rights of self-organization and collective bargaining, as set forth in section 7 of the Act. We conclude that the scope of the court's order is however appropriate for the circumstances of the case at bar.

The court also ordered the employer to reinstate the six discharged employees and tender to them sufficient travel funds to return to work. The discharged employees were apparently the nucleus of the organizational campaign.

Section 10(j) authorizes "temporary relief," as well as an appropriate restraining order. Although the employer asserted that the six employees were discharged for improprieties and misconduct that would justify discharge regardless of their union activities, the District Court determined that the employees were discharged for union activity. This is however an issue which will be resolved in the proceedings before the Board and need not be decided here. Lawrence Typographical Union v. Sperry, 356 F. 2d 58 (10th Cir.). It is sufficient in these proceedings to determine whether the case meets the standards above referred to.

■ We conclude that an order of reinstatement is a permissible exercise of the court's jurisdiction under the circumstances of the case at bar, for reinstatement will as nearly as is now possible restore the conditions prevailing before the discharges and so prevent a frustration of the ultimate administrative action. For the limited purpose of deciding whether reinstatement will serve to prevent a frustration of the Act, the court must examine the facts relative to the supervisory character of the employees' work. Also in deciding whether reinstatement is a suitable remedy, the trial court must give due consideration to existing administrative determinations of the status of the employees. The record here shows that the appellee Regional Director had ruled that senior operators Arel Rodgers and Russell Sims were supervisors and not eligible to vote at the representation election. This is the last ruling on their status by the agency concerned. The Board however directed that these senior operators be allowed to vote subject to challenge and thereby changing the procedure, but not their determined status. Under these particular facts, we conclude that temporary reinstatement of Sims and Rodgers is not necessary to protect the efficacy of a final order by the Board regarding the status of senior operators or of any other order by the Board resolving issues pending before it. The court's reinstatement order is thus modified to exclude Sims and Rodgers.

It would appear that much of the problem presented to the trial court, and the difficulty caused by the mandatory, nature of the order arose from the delay by the Board in seeking the remedy. The more time that elapses between the time the incidents occur the less effective injunctive relief becomes, and it becomes increasingly difficult to show it to be a "just and proper" remedy. This could, of course, reach a point where relief should be denied on that ground alone.

The District Court's order requires the employer to tender sufficient travel funds to enable the discharged employees to return to work. The employer should however not be required to tender travel funds in the absence of some indication that the employees involved will in fact accept temporary reinstatement. Thus the appellant will be required to tender reasonable travel expenses only to those of the four former employees who indicate they will accept temporary reinstatement, and the District Court's order is modified accordingly.

We have considered additional issues raised by the appellant on appeal and find them without merit.

The order of the District Court is affirmed as modified herein.