[Civ. No. 22768. Fourth Dist., Div. One. Feb. 18, 1981.]

AGRICULTURAL LABOR RELATIONS BOARD,
Plaintiff and Respondent, v.
RULINE NURSERY COMPANY, Defendant and Appellant.

1006

COUNSEL

Ellen Lake, Manuel M. Medeiros and Ruth Rokeach for Plaintiff and Respondent.

Thomas E. Campagne and Thomas M. Giovacchini for Defendant and Appellant.

## OPINION

**WORK, J.**—Ruline Nursery Company appeals the granting of preliminary injunctive relief requested by the Agricultural Labor Relations Board (Board) pursuant to Labor Code[1] section 1160.4.[2]

We hold Ruline was correctly enjoined from enforcing certain written "absence" warnings issued to three employees required to miss work while testifying under subpoena at an ALRB hearing. The court's finding reasonable cause existed to believe Ruline had committed unfair labor practices is supported by the record and injunctive relief was proper to avoid frustration of the remedial purposes of the Act.

I

### FACTUAL BACKGROUND

The dispute involves three company employees and active members of the United Farm Worker's Union (UFW): Justina Wichware, Victorino Olivas and Elvira Martinez. In early February 1980, each testified under subpoena at an ALRB hearing concerning unfair labor practice charges against their employer.

A chronological summary of events leading to issuance of the temporary injunction is: In January 1979, shortly after the UFW was elected the Ruline employees' bargaining representative, the company instituted a disciplinary policy whereby written warning notices were issued to any employee who, among other things, missed work without first notifying it. Receipt of 3 notices within 90 days constituted grounds for discharge.

---

[1] All references are to the Labor Code unless otherwise specified.

[2] Section 1160.4 provides: "The board shall have power, upon issuance of a complaint as provided in Section 1160.2 charging that any person [who] has engaged in or is engaging in an unfair labor practice, to petition the superior court in any county wherein the unfair labor practice in question is alleged to have occurred, or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition, the board shall cause notice thereof to be served upon such person, and thereupon the court shall have jurisdiction to grant to the board such temporary relief or restraining order as the court deems just and proper."

Labor Code sections 1140 to 1166.3 were added by Statutes 1975, 3d Extra Session, chapter 1, section 2, page 4013, and may be referred to as the Agricultural Labor Relations Act (ALRA or the Act). (See Lab. Code, § 1140.)

During this time Ruline also implemented certain discriminatory changes in working conditions allegedly in retaliation for its employees' union activities. In June 1979, the UFW filed unfair labor practice charges with the ALRB.[3]

This case arises from disciplinary notices given employees allegedly to retaliate for their testifying at hearings on previous charges.

JUSTINA WICHWARE

In early February 1980 Wichware testified under subpoena before the ALRB. In order to do so she was required to miss work.

She declares, on the day of the hearing she telephoned Ruline twice, at 6 and at 6:30 a.m. to announce she was going to testify and would be unable to attend work that day. She alleges no one answered the phone. However, in order the company be apprised of the reason for her absence she told a coworker to notify Lucy Escobedo, a Ruline supervisor, of the situation. Ruline denies receiving notification.[4]

The next day Wichware gave Escobedo a copy of the subpoena ordering her to appear.[5] She nevertheless received a warning notice, and was told the subpoena was defective because it was not dated. The warning stated it was her second and the company terminated employees on the third notice.

Friday, February 22, an irrigator for Ruline informed Wichware she would be working the next day, Saturday. Wichware replied she could not because she was to visit her retarded daughter in Los Angeles.

The next Monday she was fired for failing to work Saturday when a third disciplinary notice was issued. Although she again attempted to relate her excuse, Escobedo refused to listen.

---

[3]The complaint, subsequently amended, alleged Ruline discriminatorily changed working conditions, issued warning notices and fired employees in retaliation for their union activities and filing of unfair labor practice charges against the company.

[4]The company maintains an automatic answering service and recording device on its telephone. Ruline submits the device was in operation on the day Wichware claims she attempted to notify the company of her intent to miss work.

[5]Olivas declared Escobedo had previously informed him prior notice of an intent to miss work was unnecessary if a subpoena was later presented.

Wichware declared the company had previously told all employees Saturday work was not mandatory, although if they chose to work overtime would be paid. She declares she "told them that ... [she] might not always be able to work on Saturday because ... [she visited her] retarded child who is under care in Los Angeles at least twice a month on Saturday." Wichware declares she knows other employees who have missed work without first giving notice but who have not received written warnings.

## VICTORINO OLIVAS

On the evening of February 4, 1980, a coworker informed Olivas he was to testify the following day. Because of the late hour he did not attempt to contact Ruline until the next morning when he telephoned at 6 a.m. He declares no one answered the phone.

Olivas was not called to testify on February 5 or 6, but on both days was told to return the following day. He finally testified February 7 in the presence of Lucy Escobedo. On February 8, when he reported for work he was issued his final paycheck with three separate notices; for February 5, 6 and 7. The last notice read, "missed 3 days in a row. This is your 4th notice and this company terminates employees on the 3rd notice."[6]

Although Olivas attempted to tell Escobedo he had called Ruline on the 5th, and also tried to show her a copy of his subpoena, she responded "Well, sorry, but you are fired." He stated he did not call the company February 6 or 7 because, a few days earlier, when another worker had asked him to inform Escobedo of the reason she would not be at work Escobedo told him no prior notice was required if a subpoena was presented later. Olivas assumed this was a standard procedure.

## ELVIRA MARTINEZ

On the evening of Sunday, February 4, an ALRB attorney notified Martinez to appear at the Board hearing the next day. She telephoned Ruline the next morning before 7 a.m. to inform them of her plans. No one answered.

---

[6]Olivas does not ask to be rehired since he has found other employment.

On Tuesday, February 6, Martinez gave her ALRB subpoena to Jack Jester, a company foreman, who stated her absence "was alright." Later, however, Escobedo issued Martinez a warning notice stating the subpoena was "no good" because it was incorrectly dated.

On these facts the Board issued a new complaint alleging violations of section 1153, subdivisions (a), (c) and (d), and in March 1980 the ALRB filed for a temporary restraining order (TRO), order to show cause re preliminary injunction, and preliminary injunction pursuant to section 1160.4. The superior court granted the TRO, and a temporary injunction enjoining the company from (1) giving effect to the three warning notices issued to Olivas on February 8; to the notices issued to Wichware on February 6 and 25; and to the notice issued to Martinez on February 6; and (2) from denying employment to Wichware at Ruline's place of business.

The company asks us to vacate the injunction and dismiss related contempt proceedings.

## II

Section 1160.4 is patterned after virtually identical language in the National Labor Relations Act (NLRA) section 10(j). Moreover, "[t]he . . . [Agricultural Labor Relations Board] shall follow applicable precedents of the National Labor Relations Act, as amended." (§ 1148.)

With the language of section 1148 in mind we apply a two-fold test before granting temporary injunctive relief pursuant to NLRA section 10(j): first, is there reasonable cause to believe the unfair labor practices alleged in the underlying dispute actually occurred; and second, is the relief requested "reasonably necessary to preserve the status quo or to prevent frustration of the basic remedial purposes of the Act." In the words of the statute, the requested relief must be "just and proper." (*Solien* v. *Merchants Home Delivery Service, Inc.* (8th Cir. 1977) 557 F.2d 622, 626.) This standard also applies to preliminary injunctions issued pursuant to section 1160.4. (*Agricultural Labor Relations Bd.* v. *Laflin & Laflin* (1979) 89 Cal.App.3d 651, 671 [152 Cal.Rptr. 800]; § 1148.)

THERE WAS REASONABLE CAUSE TO BELIEVE RULINE COMMITTED AN UNFAIR LABOR PRACTICE.

The first prong of the bipartite test requires the Board to sustain a minimal burden of proof. It need not establish an unfair labor practice

has in fact been committed (*Boire* v. *Pilot Freight Carriers, Inc.* (5th Cir. 1975) 515 F.2d 1185, 1189 [34 A.L.R. Fed. 803]), nor is the court to determine the merits of the case (*Agricultural Labor Relations Bd.* v. *Laflin & Laflin, supra,* 89 Cal.App.3d 651, 671). Rather, the *reasonable cause* aspect of the two-pronged test is met if the ALRB's theory is neither *insubstantial* nor *frivolous.* (*Boire* v. *Pilot Freight Carriers, Inc., supra,* 515 F.2d 1185, 1189.) In this respect we review the superior court's finding to determine whether there was "clear error." (*Boire* v. *Pilot Freight Carriers, Inc., supra,* 515 F.2d 1185; see also *Angle* v. *Sacks* (10th Cir. 1967) 382 F.2d 655.)

The ALRB argues the record shows Ruline issued warning notices to the employees and discharged Wichware in *retaliation* for their testimony against the company. Such conduct violates section 1153 subdivisions (a), (c) and (d).[7]

It is not the superior court's province to decide whether the ALRB's theory would eventually prevail, but only that it is neither *insubstantial* nor *frivolous.* On these facts we hold its determination is not "clearly erroneous."

Although Ruline claims it issued each disciplinary notice purely pursuant to its policy requiring employees to give notice of their absences, and not because of antiunion animus nor in retaliation for the employees' testimony against it, it failed to rebut Olivas' claim Escobedo told him prior notice was unnecessary if a subpoena was later presented. Ruline also failed to answer Wichware's declarations Saturday work was not obligatory, and that other Ruline employees, not members of

---

[7]A violation of subdivision (a) is established when an employer engages in conduct which it may reasonably be said tends to interfere with, restrain or coerce an employee in the free exercise of his rights guaranteed under section 1152 (§ 1152 confers upon agricultural employees the right to self organization, to form, join or assist labor organizations to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collecting, bargaining or other mutual aid or protection); subdivision (c) prohibits discrimination with regard to the hiring or tenure of employment, or any term or condition of employment either encouraging or discouraging membership in any labor organization or participation in concerted activity (*Labor Board* v. *Erie Resistor Corp.* (1963) 373 U.S. 221, 233 [10 L.Ed.2d 308, 317, 83 S.Ct. 1139, 94 A.L.R.2d 1147]); and subdivision (d), the central charge at issue here, is violated when an employee has been discharged or otherwise discriminated against because he has filed charges or given testimony at an ALRB hearing. (*Bacchus Farms* (1978) 4 A.L.R.B. No. 26; see also *NLRB* v. *Scrivener* (1972) 405 U.S. 117 [31 L.Ed.2d 79, 92 S.Ct. 798].)

the UFW, missed work without prior notice and without being disciplined.

The company instead presented a series of defenses which do not respond to the Board's evidence of retaliation. ■ It argues, for example, the superior court should not have considered evidence of Ruline's history of antiunion conduct occurring more than six months before the filing of the instant charges. It cites for this proposition *N.L.R.B. v. Intern. Longshoremen's, etc.* (9th Cir. 1977) 549 F.2d 1346,[8] a case which in fact refutes Ruline's position. *Longshoremen's*, at page 1351, holds that while occurrences within a six-month period preceding the filing of a charge, in and of themselves may constitute unfair labor practices, earlier events may be utilized to shed light on the character of those events. Here the alleged warnings and discharges constitute unfair labor practices occurring wholly within the six-month period preceding their filing, and the evidence of Ruline's history of antiunion animus was used only to impute an improper motive for the warnings and discharges. The evidence is admissible. (See also *Akron Novelty Mfg. Co.* (1976) 224 N.L.R.B. 998.)

■ Ruline attacks several other grounds presumably relied upon by the Board in claiming the section 1153 violations. It claims its motives in issuing the instant disciplinary notices and in discharging Wichware were pure; the irrigator who ordered Wichware to work on Saturday lacked authority to receive her notice of intended absence; and that it had no knowledge either Olivas or Wichware supported the UFW. However, it is not our duty at this juncture to determine the merits of the Board's charges but merely to weigh them on the substantial/frivolous balance scale. (*Boire v. Pilot Freight Carriers, Inc., supra*, 515 F.2d 1185, 1191.) The balance tilts decisively in favor of the superior court's factual determinations and legal conclusions.[9] The Board had reasonable cause to believe Ruline committed violations of section 1153, subdivisions (a), (c) and (d).

---

[8] *Longshoremen's* interprets section 10(b) of the NLRA, 29 United States Code Annotated section 160(b)—which states in relevant part: "[N]o complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board . . . ."

[9] When determining whether *reasonable cause* exists, if several inferences may be drawn from the evidence, the court must accept the inference most favorable to the Board's theory. (*Hirsch, etc. v. Pick-Mt. Laurel Corp.* (D.N.J. 1977) 436 F.Supp. 1342, 1350.)

### The Court Properly Exercised Its Discretion in Determining Injunctive Relief "Just and Proper."

■ Having found the record contains substantial evidence supporting a finding of reasonable cause, we look to see if injunctive relief is "equitably necessary." (*Boire* v. *Pilot Freight Carriers, Inc., supra*, 515 F.2d 1185; *Angle* v. *Sacks, supra*, 382 F.2d 655, 658.) Section 1160.4 allows such relief "as the court deems just and proper."

This standard has often been described: "[Where] there exists a probability that the purposes of the Act will be frustrated unless temporary relief is granted ... [or] the circumstances of a case create a reasonable apprehension that the efficacy of the Board's final order may be nullified, or the administrative procedures will be rendered meaningless, [the just and proper standard is met] .... Preservation and restoration of the status quo are then appropriate considerations in granting temporary relief pending determination of the issues by the Board. [Citations.]" (*Angle* v. *Sacks, supra*, 382 F.2d 655, 660; see also *Boire* v. *Pilot Freight Carriers, Inc., supra*, 515 F.2d 1185.)

The status quo has been defined as the "'last uncontested status which preceded the pending controversy.'" (*Minnesota Mining and Manufacturing Company* v. *Meter* (8th Cir. 1967) 385 F.2d 265, 273.) The Board need not demonstrate the existence of a "rare emergency situation." (*Angle* v. *Sacks, supra*, 382 F.2d 655, 658-659.) Although injunctive relief is an extraordinary remedy, it may be used whenever either an employer or union has committed unfair labor practices which, under the circumstances, render any final order of the Board meaningless or so devoid of force that the remedial purposes of the Act will be frustrated. (*Boire* v. *Pilot Freight Carriers, Inc., supra*, 515 F.2d 1185, 1192; *Wilson* v. *Milk Drivers & Dairy Employees U., Local 471* (8th Cir. 1974) 491 F.2d 200.)

The remedial purposes underlying the Act are enunciated in section 1140.2: "[T]o encourage and protect the right of agricultural employees to full freedom of association, self-organization, and designation of representatives of their own choosing, to negotiate the terms and conditions of their employment, and to be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other

mutual aid or protection." To these ends the Act provides for an election procedure (§ 1156 et seq.), defines certain conduct as unfair labor practices, provides for remedies (§ 1153 et seq.), and institutes procedures whereby unfair labor practice charges may be heard, and appeals taken to the Board and eventually to the appellate courts. (§ 1160 et seq.)

Experience has demonstrated protracted delays are inherent in these procedures. Charges must be investigated, hearing dates are subject to the schedules of the parties, posthearing briefs are submitted after the hearing, and there is a lapse of time between the filing of the briefs and the issuance of the hearing officer's decision when exceptions may be filed and the review process begins. In the meantime new violations often go unchecked and the remedy becomes theoretical rather than meaningful. Section 1160.4 was enacted to partially avoid these problems.[10]

■ Here the superior court ordered Wichware reinstated despite Ruline's assertion the Board's prospective remedy of reinstatement with back pay constituted adequate compensation, and despite its claim removal of the notices issued to Olivas and Martinez was unnecessary because, pursuant to company policy, they were no longer effective after three months.

Board orders will approach empty formality if, when finally issued, an employer's coercive conduct has already succeeded in destroying its remaining employees' interest in union activity, their will to assert their rights under the Act, or to testify at ALRB hearings against their employer. If employees who have suffered unfair labor practices must wait, in some instances, years before a final disposition by the Board is rendered, the clear message to remaining employees and agricultural

---

[10]Senator Taft has been quoted from 1 Legislative History of the Labor Management Relations Act, 433 (1947), explaining the purpose behind section 10(j) of that Act (29 U.S.C. § 160(j), the parallel legislation to § 1160.4—the ALRA): "'Experience under the National Labor Relations Act has demonstrated that by reason of the lengthy hearings and litigation enforcing its orders, the Board has not been able in some instances to correct unfair labor practices until after substantial injury has been done. Under the present act the Board is empowered to seek interim relief only after it has filed in the appropriate circuit court of appeals its order and the record on which it is based. Since the Board's orders are not self-enforcing, it has sometimes been possible for persons violating the act to accomplish their unlawful objective before being placed under any legal restraint and thereby to make it impossible or not feasible to restore or *preserve the status quo* pending litigation.'" (*Boire v. Pilot Freight Carriers, Inc.,* *supra,* 515 F.2d 1185, 1193.)

workers at large is that the ALRB is not able to meaningfully aid those who are unlawfully discharged or penalized for participating in collective bargaining. Here there exists a significant possibility the Act's remedial purposes would be frustrated in just this manner. This supports the court's finding the injunction to be just and proper.

Affirmed.

Brown (Gerald), P. J., and Todd (W. L.), J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.