[No. F002855. Fifth Dist. Feb. 20, 1985.]

AGRICULTURAL LABOR RELATIONS BOARD,
Plaintiff and Respondent, v.
TEX-CAL LAND MANAGEMENT, INC., Defendant and Appellant.

432

---

**COUNSEL**

Dressler, Quesenbery, Laws & Barsamian, Larry A. Dawson, Patricia J. Rynn and Richard J. Papst for Defendant and Appellant.

Manuel M. Medeiros, Daniel G. Stone and Michael G. Lee for Plaintiff and Respondent.

Dianna Lyons, Ellen J. Eggers, Daniel A. Garcia, Wendy Sones and Ira L. Gottlieb as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

**FRANSON, Acting P. J.—**

STATEMENT OF THE CASE AND FACTS

Appellant Tex-Cal Land Management is an agricultural employer. It appeals from a preliminary injunction entered July 19, 1983, by the Tulare County Superior Court pursuant to Labor Code section 1160.4.[1]

The injunction orders appellant not to discriminatorily displace listed bargaining unit seniority employees, not to discriminatorily reduce availability of employment for listed bargaining unit seniority employees; not to hire any persons to do bargaining unit work other than those listed seasonal seniority crews and those steady seniority employees that have performed bargaining unit work in prior seasons; and to give the union 24 hours notice of hiring needs to enable the union to furnish the required workers. The injunction is to continue until the underlying unfair labor relations charge has been finally resolved.

The history of this dispute is complicated, and the record before the court is disorganized. A brief summary follows.

Appellant is a large-scale farming operation. It does not own land, but farms under long term leases. The underlying Agricultural Labor Relations

---

[1]Labor Code section 1160.4 reads: "The board shall have power, upon issuance of a complaint as provided in Section 1160.2 charging that any person has engaged in or is engaging in an unfair labor practice, to petition the superior court in any county wherein the unfair labor practice in question is alleged to have occurred, or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition, the board shall cause notice thereof to be served upon such person, and thereupon the court shall have jurisdiction to grant to the board such temporary relief or restraining order as the court deems just and proper."
Hereinafter all references are to the Labor Code unless otherwise noted.

Board (ALRB) complaint charges that appellant and a long list of other business entities and individuals constitute a single integrated employer, are alter egos of each other and are using the fiction of separate existence to avoid the effect of the Agricultural Labor Relations Act (ALRA).

Appellant was the employer bound by a certification election in October 1975. In June 1977, the United Farm Workers (UFW) was certified as the bargaining representative for appellant's agricultural employees. The most recent collective bargaining agreement between the UFW and appellant expired in June 1982, but was extended until February 1983 on a day-to-day basis.

On January 21, 1983, the UFW filed unfair labor practice charges alleging that appellant had delayed seasonal pruning and tying operations to displace union workers. The ALRB regional director investigated, filed an ALRB complaint and sought injunctive relief from Tulare County Superior Court. On February 18, 1983, the superior court (Kenneth Conn, J.) issued an injunction, which was later modified on March 7, 1983. The February 18th injunction ordered appellant not to use anyone other than nine seniority crews with up to forty workers each in the 1983 pruning and tying operations. The March 7th modification authorized appellant to use up to eight additional crews upon condition that the nine original crews should be filled first, and the union should have an opportunity to provide workers for the additional crews.

Another UFW complaint was filed March 15, 1983, alleging that appellant had refused to bargain and had discriminated against union members in employment. The ALRB's regional director investigated again and issued another ALRB complaint charging appellant with violations of section 1153, subdivisions (a), (c) and (e).[2] The ALRB complaint for injunctive relief in the present case was filed June 28, 1983. This complaint charges that the named individuals and companies were all acting in concert with appellant, as alter egos of each other, that they have refused to bargain with the UFW, have refused to document the alleged lease cancellations and have discriminatorily displaced bargaining unit seniority employees and discriminatorily reduced availability of work for seniority employees.

---

[2]Section 1153 provides that it shall be an unfair labor practice for an agricultural employer to interfere with, restrain or coerce agricultural employees in the exercise of the right to self-organization guaranteed in section 1152 (subd. (a)); to discriminate in regard to the hiring or tenure of employment or to discourage membership in any labor organization (subd. (c)); or to refuse to bargain in good faith with certified labor organizations (subd. (e)).

Appellant apparently rehired most of its seniority employees before the hearing on the injunction. The Tulare County Superior Court (Silveira, J.) granted the injunctive relief described above.

After issuance of this injunction, appellant sought a writ of prohibition/certiorari in this court, staying its effect. We denied the petition without prejudice, citing *In re Marriage of Fink* (1979) 25 Cal.3d 877, 887, 888 [160 Cal.Rptr. 516, 603 P.2d 881]. This appeal followed.

Appellant's opening brief in this appeal summarized the facts without citation to the record. After respondent ALRB asked that the appeal be denied under *In re Marriage of Fink, supra,* 25 Cal.3d 877 and *People* v. *Dougherty* (1982) 138 Cal.App.3d 278 [188 Cal.Rptr. 123], appellant's reply brief gave this summary of the facts.

"In January and February of 1983, the owners/lessors were notified that Tex-Cal was delinquent on its mortgage and tax payments, in violation of the leases, and that foreclosure was possible (TCX 3, p. 1, lines 25-28). In January 1983, the FMHA had still not yet funded Tex-Cal for farming operations on its 1983 crop (TCX 3, p. 2, lines 23-24). Pruning of the grapevines is typically performed in January and February and must be completed before the buds start to push out, which is usually around the first of March (TCX 1, p. 3, lines 14-17.)

"In February and March of 1983, a majority of the land-owners of the property leased to Tex-Cal declared that the leases were in breach and cancelled them (TCX 3, p. 2, lines 2-11). Tex-Cal was unable to continue its usual farming operations without these leases (TCX 1, p. 3, lines 26-27; TCX 3, p. 2, lines 12-17). Subsequently, the FMHA decided to advance limited emergency operating funds to Tex-Cal, to enable it to harvest the 1983 grape crop (TCX 3, p. 2, lines 24-27).

"After being assured that Tex-Cal had received necessary FMHA funding, enabling it to rehire sufficient seniority employees to perform necessary work, the landowner/lessors agreed, on June 23, 1983, to reinstate their leases with Tex-Cal (TCX 3, p. 3, lines 2-5). Mailgrams were sent to the UFW and ALRB General Counsel's offices, notifying them that steady seniority employees were being reinstated as of June 24, 1983, and that seniority harvest crews were being recalled for work on June 27 and June 28, 1983 (TCX 1, p. 6, lines 5-10; TCX 2, Declaration of Linda Tipton; ALRB's Exhibit D, paragraph 21).

"Since June 27, 1983, the seniority bargaining unit employees have been rehired by Tex-Cal, and are still gainfully employed there (TCX 3, p. 3, lines 6-24)."

The problem with this summary is that "TCX 3" is simply a declaration by one of appellant's management employees, David Caravantes. This statement of facts implies that appellant between February and March 1983 was not in control of work done on the ranches where leases were cancelled. But this implication is countered by respondent's exhibits below which include declarations that appellant's management employees and vehicles were used on the same ranches during the February-June period, supervising nonunion work force and declarations by ALRB employees that they searched records and found no recorded leases or lease cancellations on the relevant lands. Appellant did not introduce documentation of the alleged lease cancellations for the ALRB or for the court below.

The essence of the ALRB complaint against appellant and these related individuals and businesses is that they were, in fact, a single employer and used their apparent separation to frustrate workers' rights and avoid obligations imposed by the ALRA. Curiously, appellant does not dispute the clear implication that the trial court accepted these "alter ego" allegations at face value. Appellant attacks the "competence" of the evidentiary foundation for the injunction (without citing authority on the contested evidence), attacks the standard it says was used below (without citing where any improper standard was applied) and argues that it rehired the workers in question before the injunction was issued. It does not attack the "alter ego" theory used below, even though that theory seriously undermines its version of the facts. If all of the named persons and entities are alter egos of appellant, putative lease problems with appellant's alter egos do not excuse a pattern of illegally subcontracting and diluting bargaining unit work without bargaining with the UFW. The landowners and other entities involved would be equally bound to comply with appellant's obligations to bargain with the union. Rehiring seniority crew workers just before the hearing on the injunction did not necessarily end the pattern of unfair labor practices involved below. They may have been rehired just to avoid this injunction. If appellant's combined enterprise could disassemble again and substitute new workers nominally employed by the landowners or labor contractors without bargaining with the union, then the pattern would continue, and the union's certification rendered meaningless.

Appellant is the only party to appeal. Some of the individuals named in the injunction and complaint were represented below, but they have filed substitution of counsel letters designating themselves as in pro. per. and taken no other action to appeal.

## DISCUSSION

I. *The appeal on evidentiary grounds should be denied because appellant does not support its statement of the facts with adequate citations to the record.*

■ Appellant's statement of the facts is set out above. What it does not mention is that the ALRB submitted affidavits from many workers and ALRB representatives that conflict with appellant's version of the facts. These declarations show no recorded leases on the farms appellant used, and no recorded lease cancellations when appellant claimed it had lost control of various ranches. Foremen employed by appellant or Dudley M. (Buddy) Steel, Jr., (and using his vehicles), were still supervising work by nonunion crews on the same ranches. Dudley M. (Buddy) Steel, Jr., is one of the defendants named below, who is alleged to be an alter ego of appellant. Various steady union workers who had been employed by appellant were thus displaced by nonunion workers. What these affidavits suggest is that appellant (and its related entities) has engaged in a deliberate pattern of displacing union workers by claiming to lose its leases and then replacing bargaining unit workers with nonunion workers hired through labor contractors. One would expect appellant to meet this showing with documentation of the alleged lease cancellations. This has not been done.

A reviewing court begins with the presumption that the record contains evidence supporting a lower court's findings of fact. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].) When appellant claims that evidence is insufficient below, it must demonstrate that there is no substantial evidence to support the challenged findings. In doing so, it must "set forth in their brief *all* the material evidence on the point and *not merely their own evidence.* Unless this is done the error is deemed to be waived." (*Foreman & Clark Corp.* v. *Fallon, supra,* 3 Cal.3d 875, 881; *In re Marriage of Fink, supra,* 25 Cal.3d 877, 887-888; *People* v. *Dougherty, supra,* 138 Cal.App.3d 278, 282-283.)

Appellant's statement of the facts (set out above) depends exclusively on two of its own exhibits. The document most heavily relied upon (TCX 3) is a self-serving declaration by one of appellant's management employees. Respondent's exhibits are completely ignored. Appellant's failure to discuss respondent's evidence is the more remarkable because this court cited *In re Marriage of Fink, supra,* 25 Cal.3d 877, to support its denial of prohibition to appellant. The same law firm (and at least one of the same lawyers) represented appellant at that time.

Appellant responded to the above argument for denial of its appeal with the above "statement of facts" from its reply brief. This statement of facts is also deficient in that it fails to mention respondent's evidence. Appellant might contend that it has not really attacked the injunction for lack of "substantial evidence," but only for use of an improper standard for relief. This potential argument is rebutted by appellant's opening brief, which contends that "the Board failed to meet its evidentiary burden under Labor Code section 1160.4 . . ." and its reply brief, which contends that "[n]o evidence whatsoever was submitted to the court to show that the acts were likely to recur in the future." These claims that the evidence presented below was insufficient are totally unsupported by discussion of respondent's evidence. To the extent that appellant challenges the evidentiary foundations of the injunction, its appeal should be summarily denied.

II. *The trial court presumably applied the correct test to the request for injunctive relief under section 1160.4.*

■ Appellant's primary legal claim is that the superior court must consider traditional equitable standards before issuing an injunction in a section 1160.4 action. This argument, however, is unaccompanied by any citation to the record to show that the trial court *ignored* traditional equitable standards. The argument is raised by respondent's claim that traditional equitable standards do not apply, but there is no memorandum of decision or other statement of reasons for the preliminary injunction in the record. The hearing on the injunction was unreported.

We should presume that the superior court applied the correct standard; nevertheless, we will discuss the appellant's "traditional equitable standards" argument on its merits.

■ Section 1160.4 is similar to section 10(j) of the National Labor Relations Act (NLRA) (29 U.S.C. § 160(j)) and section 3541.3, subdivision (j) of the Educational Employment Relations Act (EERA) (Gov. Code, § 3540 et seq.) (*Public Employment Relations Bd.* v. *Modesto City Schools Dist.* (1982) 136 Cal.App.3d 881, 895-896 [186 Cal.Rptr. 634]). Cases construing one of these sections provide applicable guidance in construing the others. (*Ibid.*) ■ The *Modesto City Schools Dist.* case provides a recent statement of this court's view of the EERA section that is equally applicable to the ALRA.

"Before injunctive relief may be granted on the request of either the NLRB or ALRB, the trial court must determine that there exists *reasonable cause* to believe an unfair labor practice has been committed and that the

relief sought is *just and proper.* (*Hoffman* v. *Cement Masons Union Local 337, etc., supra,* 468 F.2d 1187, 1192; *Agricultural Labor Relations Bd.* v. *Ruline Nursery Co., supra,* 115 Cal.App.3d 1005, 1012 [171 Cal.Rptr. 793]; *Agricultural Labor Relations Bd.* v. *Laflin & Laflin, supra,* 89 Cal.App.3d 651, 671 [152 Cal.Rptr. 800].) Naturally, the court retains discretion to issue any order that is 'just and proper' under the circumstances and is not bound by the recommendation of the NLRB or the ALRB. *We believe that traditional equitable considerations would certainly come into play during this part of the test* [italics added]. (See *Agricultural Labor Relations Bd.* v. *California Coastal Farms, Inc.* (1982) 31 Cal.3d 469, 479 . . . .)

"In construing whether there is reasonable cause to believe an unfair labor practice has been committed within the meaning of the NLRA and the ALRA, it has been stated that PERB is required to sustain a minimal burden of proof: 'It need not establish an unfair labor practice has in fact been committed (*Boire* v. *Pilot Freight Carriers, Inc.* (5th Cir. 1975) 515 F.2d 1185, 1189 . . .), nor is the court to determine the merits of the case (*Agricultural Labor Relations Bd.* v. *Laflin & Laflin, supra,* 89 Cal.App.3d 651, 671 [152 Cal.Rptr. 800]). Rather, the *reasonable cause* aspect of the two-pronged test is met if the ALRB's theory is neither *insubstantial* nor *frivolous.* (*Boire* v. *Pilot Freight Carriers, Inc., supra,* 515 F.2d 1185, 1189.) In this respect we review the superior court's finding to determine whether there was "clear error." (*Boire* v. *Pilot Freight Carriers, Inc., supra,* 515 F.2d 1185; see also *Angle* v. *Sacks* (10th Cir. 1967) 382 F.2d 655.)' (*Ruline Nursery Co., supra,* 115 Cal.App.3d 1005, 1012-1013.)

". . . . . . . . . . . . . . . . . . . . . . . .

"The question before us is to determine whether the injunction against the District was just and proper. As the court in *Agricultural Labor Relations Bd.* v. *Ruline Nursery Co., supra,* 115 Cal.App.3d 1005, 1015 succinctly stated:

" 'This standard has often been described: "[Where] there exists a probability that the purposes of the Act will be frustrated unless temporary relief is granted . . . [or] the circumstances of a case create a reasonable apprehension that the efficacy of the Board's final order may be nullified, or the administrative procedures will be rendered meaningless, [the just and proper standard is met] . . . . Preservation and restoration of the status quo are then appropriate considerations in granting temporary relief pending determination of the issues by the Board. [Citations.]" (*Angle* v. *Sacks, supra,*

382 F.2d 655, 660; see also *Boire* v. *Pilot Freight Carriers, Inc, supra,* 515 F.2d 1185.)

" 'The status quo has been defined as the " 'last uncontested status which preceded the pending controversy.' " (*Minnesota Mining and Manufacturing Company* v. *Meter* (8th Cir. 1967) 385 F.2d 265, 273.) The Board need not demonstrate the existence of a "rare emergency situation." (*Angle* v. *Sacks, supra,* 382 F.2d 655, 658-659.) Although injunctive relief is an extraordinary remedy, it may be used whenever either an employer or union has committed unfair labor practices which, under the circumstances, render any final order of the Board meaningless or so devoid of force that the remedial purposes of the Act will be frustrated. (*Boire* v. *Pilot Freight Carriers, Inc., supra,* 515 F.2d 1185, 1192; *Wilson* v. *Milk Drivers & Dairy Employees U., Local 471* (8th Cir. 1974) 491 F.2d 200.)' " (*Public Employment Relations Bd.* v. *Modesto City Schools Dist., supra,* 136 Cal.App.3d 881 at pp. 896-897, 902-903.)

This shows that "traditional equitable standards" are properly considered in a section 1160.4 action, but that the traditional idea of irreparable harm or harm for which there is no adequate legal remedy is met when the employer's practices may frustrate the purposes of the ALRA.

The public interest, as defined and protected by the ALRA, is in preservation of the bargaining unit created by the union certification process. The evidence before the superior court provided reasonable cause to believe that appellant was engaged in a pattern of displacing union employees to force an abandonment of certification and to discredit the union as a protector of workers' rights. This conclusion is supported by the long saga of litigation and delay in appellant's relations with the union. One bit of evidence placed before the court contained a report of an admission by an appellant employee to the effect that decertification was appellant's goal. ▪ As noted by the Third Circuit Court of Appeals in *Eisenberg, etc.* v. *Wellington Hall Nursing Home* (3d Cir. 1981) 651 F.2d 902, 907, "When the Board, faced with an employer's resort to tactics calculated to undermine union support at a critical stage of the bargaining process, seeks [injunctive] section 10(j) relief, the focus of attention should not be on what relief may ultimately be granted to individual employees, but on the likelihood of harm to the bargaining process in the interim." ▪ Here, the availability of administrative "make whole" relief would not avoid the negative effects on the bargaining process that could be inferred from appellant's pattern of behavior. This was the second injunction sought within the year to prevent appellant from displacing union workers. The evidence suggests an intent to continue the pattern of displacement to destroy the union's effectiveness as

a bargaining agent. In these circumstances, the injunction met "traditional equitable standards," and was "just and proper."

III. *Does rehiring the workers make any difference?*

■ Appellant attempts to distinguish *Public Employment Relations Bd.* v. *Modesto City Schools Dist.*, *supra*, 136 Cal.App.3d 881 by its claim that it had reinstated all seniority workers in the days just prior to the hearing below. Appellant's theory is that since it had rehired the workers, no continuing unfair labor practice could possibly justify the injunction, and none of the evidence about past practices showed that its unfair labor practices were likely to recur. This is yet another attack on the sufficiency of the evidence, without any discussion of the respondent's evidence. It is also unpersuasive. This was the second injunction sought, along the same lines, within six months. Appellant was awash in evidence of anti-union animus, refusal to document financial claims and refusal to document its claims about lost leases. In this context, its claim that "no evidence whatsoever . . . show[ed] that the acts were likely to recur in the future" is specious. In any case, the rehiring of the seniority workers was in late June 1983, after the ALRB complaint was filed and immediately before injunctive relief was sought. Federal courts have noted that "offending acts ceased at the time or after the charge is made are properly enjoined, on the ground that the court may infer that the ceasing was caused by the filing of the charge." (*National Labor Relations Bd.* v. *Illinois Tool Works* (7th Cir. 1941) 119 F.2d 356, 364.)

We conclude that the rehiring of the workers did not affect the superior court's power to issue the injunction. The court could reasonably infer that they were rehired because the complaint was filed and could be dismissed again after the hearing.

IV. *Was respondent's evidence below "incompetent"?*

■ Appellant objected to parts of respondent's exhibits. Now, in a one-page argument, appellant assumes that admission of this evidence was error and claims that absent this "incompetent" evidence, the injunction was not based on substantial evidence. This claim is unsupported by citation to the record showing that objectionable evidence was used, or any particularized argument regarding the admissibility of the evidence in question. As a result, this claim should be treated as waived under *In re Marriage of Fink*, *supra*, 25 Cal.3d 877, 887-888 and *People* v. *Dougherty*, *supra*, 138 Cal.App.3d 278.

As respondent ALRB points out, the California Rules of Court and the Code of Civil Procedure contemplate the use of affidavits and declarations in decisions on applications for injunctions. (Cal. Rules of Court, rule 323(a); Code Civ. Proc., § 527, subd. (a).)

*V. Does the injunction unlawfully impose a "hiring hall" provision on appellant?*

■ Appellant contends that the injunction effectively imposes a particular contractual provision—a hiring hall—on appellant and that this is in excess of the ALRB's power. This argument is inapposite, because the injunction is an exercise of the superior court's power under section 1160.4— not an exercise of ALRB authority. Section 1160.4 does not limit the superior court's power to the same remedial function as the ALRB. Section 1160.4 relief has a different purpose, so it makes sense for it to have a distinct range of potential forms. The ALRB provides expert adjudication of farm labor disputes. Section 1160.4 relief is a temporary stopgap to preserve the status quo pending the completion of the ALRB's administrative process. The need for immediate relief to preserve the options of the ALRB is the cornerstone of section 1160.4's purpose. The court could reasonably conclude that the notice requirement was needed to preserve the bargaining unit pending ALRB action.

Imposition of a *temporary* injunction requiring appellant to notify the union of its hiring needs is not the same as the imposition of a contractual term. Appellant has not been required to hire any union worker that does not have seniority. This injunction is only in force as long as the underlying unfair labor practice charge is unresolved. Once that charge has been resolved, the injunction will not be in effect.

The judgment is affirmed.

Woolpert, J., and Martin, J., concurred.