Elmer **DAVIS**, **Regional Director of the Sixteenth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD,** Petitioner,

v.

**ACKER INDUSTRIES, INC.,** Respondent.

**Civ. No. 69–169.**

United States District Court,
E. D. Oklahoma.

Jan. 15, 1970.

Evert Rhea, Atty., N.L.R.B., Fort Worth, Tex., for petitioner.

Edward E. Soule, Lytle, Soule & Emery, Oklahoma City, Okl., for respondent.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

■ Petitioner proceeds herein on behalf of the National Labor Relations Board (Board or NLRB), before which is pending a controversy between the International Association of Machinists and Aerospace Workers, AFL-CIO (Union) and the Respondent. Said controversy arose out of charges filed by the Union on August 15, 1969 as amended September 12, 1969 alleging that Respondent had engaged in unfair labor practices within the meaning of 29 U.S. C.A. § 158(a) (1), (3) and (5). Petitioner seeks from this Court a temporary injunction against the Respondent pending final disposition of the controversy now before the Board to preserve the issues there involved for orderly determination, as provided in 29 U.S.C.A. § 160(j). The Court has jurisdiction of the parties and has the power to grant the relief requested if warranted by the

facts and circumstances presented by the parties at the evidentiary hearing held by this Court for the purpose of resolving factual issues involved herein.

29 U.S.C.A. § 160(j) provides:

"The Board shall have power, upon issuance of a complaint as provided in subsection (b) charging that any person has engaged in or is engaging in an unfair labor practice, to petition any district court of the United States (including the District Court of United States for the District of Columbia), within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper."

Our Circuit in Angle v. Sacks, 382 F.2d 655 (Tenth Cir.1967), has afforded guidance in the application of the above statute with this language:

"We do think, however, that the legislative history indicates a standard in addition to the 'probable cause' finding that must be satisfied before a district court grants relief. The circumstances of the case must demonstrate that there exists a probability that the purposes of the Act will be frustrated unless temporary relief is granted. Administration of the Act is vested by Congress in the Board, and when the circumstances of a case create a reasonable apprehension that the efficacy of the Board's final order may be nullified, or the administrative procedures will be rendered meaningless, temporary relief may be granted under section 10(j). Preservation and restoration of the status quo are then appropriate considerations in granting temporary relief pending de-

termination of the issues by the Board."

To the same effect is Minnesota Mining and Mfg. Co. v. Meter, 385 F.2d 265 (Eighth Cir.1967), which case also emphasizes that in determining the propriety of injunctive relief it is necessary that the circumstances of each particular case must be considered by the Court.

Petitioner asserts that the unfair labor practices committed by the Respondent consist of: '

(1) Refusing to recognize and bargain with the Union as the collective bargaining agent of the Respondent's employees classified as production, maintenance and over the road truck drivers on the basis of authorization cards signed by a majority of Respondent's employees,

(2) Discharging Henry Streater, an employee, because of his Union activities,

(3) Granting a wage increase to employees after knowledge of Union activity in the plant,

(4) Interrogating and threatening employees with a closing of the plant because of the Union, and,

(5) Refusing to reinstate strikers.

The injunctive relief sought by Petitioner is to require Respondent to recognize and bargain with the Union, reinstate Henry Streater, re-employ all strikers and abstain from engaging in unfair labor practices.

The evidence reveals that the Union began its organizational campaign on July 27, 1969. By July 29, 1969, a substantial majority of Respondent's employees had signed cards authorizing the Union to act as their bargaining agent for the unit described as Respondent's production, maintenance and over the road truck drivers.[1] On July 29, 1969, the Union sent the Respondent the following night letter telegram:

"BE ADVISED THAT THE INTERNATIONAL ASSOCIATION OF MA-

1. The Respondent admits that such would be an appropriate bargaining unit if certified by the NLRB.

CHINISTS AND AERO SPACE WORKERS HAS BEEN AUTHORIZED TO REPRESENT ALL PRODUCTION AND MAINTENANCE EMPLOYEES INCLUDING OVER THE ROAD TRUCK DRIVERS AT THE WEWOKA OKLA PLANT BY SUBSTANTIAL MAJORITY OF YOUR EMPLOYEES THIS IS A DEMAND ON THE COMPANY TO MEET AND BARGAIN WITH THE UNION IN ALL MATTERS CONCERNING WAGES \ HOURS OF WORK WORKING CONDITIONS AND OTHER CONDITIONS OF EMPLOYMENT AS PROVIDED FOR IN THE NATIONAL LABOR RELATIONS ACT OF 1947 AS AMENDED THE UNION IS OFFERING TO SHOW PROOF OF ITS MAJORITY CLAIM EITHER AT THE COMPANYS OFFICE IN WEWOKA OR THE OKLAHOMA CITY OFFICE AT 5000 NORTHWEST 5TH MONDAY MORNING AUGUST THE 4TH 1969 10AM IS SUGGESTED AS THE TIME MR ELMER DAVIS 16TH REGIONAL DIRECTOR NATIONAL LABOR RELATIONS BOARD FORT WORTH TEXAS IS BEING FURNISHED A COPY OF THIS DEMAND AS THE EMPLOYEES RIGHTS TO SELF ORGANIZATION IS PROTECTED BY FEDERAL LAW AWAITING YOUR IMMEDIATE REPLY"

Respondent received this telegram at 4:30 P.M. on July 30, 1969. On August 1, 1969, the Respondent replied to the above telegram by letter as follows:

"We have received your telegram. We do not believe that our employees desire to be represented by your union. Therefore we would not be in a position to recognize your union as their representative in the absence of NLRB certification.

"In regard to your suggestion of a card count, we do not believe that would be a reliable method to ascertain the wishes of the employees. We believe that the only reliable procedure to determine the wishes of the employees is through an NLRB election. Therefore we decline to participate in a card count.

"We cannot determine from your telegram whether the bargaining unit which you propose would be appropriate."

Thus, the evidence is without significant dispute about the authorization cards, the telegram from the Union, the refusal of Respondent to recognize the Union and to participate in a card count; the suggestion of Respondent that an election and NLRB certification be sought and that the Union has not been certified by NLRB as bargaining agent for the employees.

However, the evidence is conflicting about the reason for the discharge of Henry Streater. The Petitioner presented evidence that he was the leader among the employees of Respondent for unionization and made the first contact with the Union which resulted in the authorization cards. The Respondent presented evidence that it did not know of the above union activities by Henry Streater [2] and discharged him only by reason of his unsatisfactory work performance over a period of time, the discharge being precipitated by his installing a new air horn on Respondent's truck in Oklahoma City contrary to instructions he had received from the Respondent.

And as to the wage increases, the Respondent presented evidence that they had been decided upon by company officials on July 22, 1969 to become effective August 4, 1969, and when decided upon the Respondent had no knowledge of any union activity in its plant. Respondent also presented evidence that prior to knowledge of union activity in its plant it had notified several employees that they were to receive a wage increase. Further, Respondent's evi-

2. He was not one of the members of the committee of employees that met and conferred with Respondent after the unionization effort was begun.

dence was to the effect that it went ahead with the wage increases on August 4, 1969, at which time it knew of the union activities in its plant, on advice of its attorney who expressed the opinion that to stop the wage increases after learning of union activities in the plant would in itself be an unfair labor practice.[3]

■ The evidence is in direct conflict about threats of Respondent to close down because of union activities and both sides presented evidence in support of claims of improper conduct by the other side after union activities got underway and particularly after the strike and refusal by Respondent to reinstate the strikers. Petitioner presented evidence that Respondent ran into a picket with a truck. Respondent's evidence was that the picket deliberately walked into the side of its truck and faked an accident. The latter version is correct in the opinion of the Court. The evidence revealed sabotage of Respondent's equipment before the strike and obscene activities by the strikers after they went out. All the evidence in this category presented by one side was disputed by the other side.

It is undisputed under the evidence that most of Respondent's employees went on strike and set up a picket line on August 14, 1969, after Henry Streater was discharged by Respondent; later, on August 26, 1969, an unconditional offer to return to work was made on behalf of the strikers which offer the Respondent refused to grant; that by August 26, 1969, Respondent had permanently replaced the strikers and no job vacancies existed in the plant.

■ In the circumstances of this case and the findings and conclusions of the Court, it is not felt that an injunction should issue under 29 U.S.C.A. § 160(j) being mindful that jurisdiction in this case is limited to a temporary injunction and the preservation of the status quo. This is to find and conclude that the Board has not issued a bargaining order; that Respondent has refused to recognize and bargain with the Union by declining to participate in a card count and insisting upon an election;[4] that the charges of contemporaneous unfair labor practices against the Respondent are not supported by the evidence which is believed by the Court to be true and correct;[5] that Respondent made no

3. See Deutsch Company, Metal Components Division, 178 NLRB No. 95. 1969 CCH NLRB 21,228.

4. There is respectable authority that the injunction sought herein to require bargaining should not be issued on authorization cards which have not been accepted or recognized by the employer and where there is no NLRB certification. In other words, no 10(j) injunction should issue requiring collective bargaining until the Board has issued a bargaining order whether based on an election or otherwise. See Elmer Davis v. Joseph Ferrantello, 49 LC 18,945 (N.D. Tex.1964). Distinguish: Henderson v. Gibbons & Reed Company, 53 LC 11,081 (N.Mex.1966), where the company examined and accepted the cards. It would appear that an employer has the right to refuse bargaining status on cards and insist upon a secret election but only if the employer does not commit or has not committed contemporaneous unfair labor practices which would tend to undermine the unions majority and make a fair election an unlikely possibility.

NLRB v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969) holds:

" * * * for an employer can insist on a secret ballot election, unless in the words of the Board, he engages 'in contemporaneous unfair labor practices likely to destroy the union's majority and seriously impede the election.' "

Petition contends that Respondent accepted the cards by saying "I don't doubt it" when confronted with the verbal statement that the Union had a majority of signed authorization cards. However, the official of Respondent involved testified that his response was, "I doubt it." The latter response conforms to Respondent's previous letter and subsequent conduct and the Court finds such to have been the response of this official.

5. NLRB v. Gissel Packing Co., supra, Note 4, holds that unambiguous union authorization cards obtained from a majority of employees without misrepre-

threats to employees about closing its plant if it became unionized; that the wage increases effective August 4, 1969 were determined by Respondent before any union activities in the plant were known by it;[6] that it is the opinion of the Court from hearing the evidence and seeing the demeanor of the witnesses at the hearing that Henry Streater was an unsatisfactory employee, had been having trouble with Respondent which led to his seeking to unionize the plant and that his discharge was ordered by Respondent without actual knowledge that he was the instigator of union activities in the plant[2] and his discharge was for reasons not connected with union activities in the plant by him or others;[7] that in view of the above findings Respondent has not engaged in unfair labor practices violating 29 U.S.C.A. § 158(a) (1) and (3); that a fair NLRB election could have been held on or after July 29, 1969, as Respondent committed no unfair labor practices to prevent the same after it received knowledge of union activities in its plant and the possession by the Union of the authorization cards; that in the foregoing circumstances Respondent's refusal to bargain with the Union was not a violation of 29 U.S.C.A. § 158(a) (5) and as the strike was not an unfair labor strike Respondent has not committed an unfair labor practice by refusing reinstatement.

 Thus, the above findings lead the Court to conclude that probable cause for belief that unfair labor practices have been committed does not exist and additionally that the purposes of the Act will not be frustrated nor will the Board's final order be nullified or rendered meaningless by a failure to grant an injunction. If the Board concludes from all the evidence that by reason of contemporaneous unfair labor practices of the Respondent a fair NLRB election could not have been held after the Respondent received notice of the union activity and authorization cards, then the Board may enter a bargaining order requiring the Respondent to bargain with the Union. If, on the other hand, the Board should decide that an election should be held, it may order the same and the matter of certification settled. If the striking employees were entitled to be returned to work on August 26, 1969, they will be reinstated and will receive compensation from such date by Board Order. NLRB v. St. Clair Lime Company, 315 F.2d 224 (10 Cir.1963). If Henry Streater was wrongly discharged on August 13, 1969, he will be entitled to reinstatement and compensation from the date of such discharge by Board Order. It is, therefore, the opinion, finding and conclusion of the Court that there does not exist a probability that the purposes of the Act will be frustrated unless temporary relief is granted. Angle v. Sacks, supra. Nor that the efficacy of the Board's final or-

sentation or coercion will provide bargaining status where a fair NLRB election probably could not be held because of independent unfair labor practices committed by employer. In the case at bar, the cards appear to be unambiguous and were obtained from a majority of the employees without misrepresentation or coercion but the Court finds no independent contemporaneous unfair labor practices to have been committed by the employer and a fair NLRB election could be held.

6. The timing of the pay increases with reference to the decision to grant the same and the effective date thereof seems to conform to past practices of Respondent in that past decisions were made approximately two weeks in advance of the effective date and it appears that some employees were advised of the wage increases before the Respondent received the above mentioned telegram from the Union.

7. By finding that Henry Streater was fired for unsatisfactory work performance, his discharge was for economic reasons and was not an unfair labor practice by discharging him for union activities. By this finding, the strike which was based on or caused by the discharge of Henry Streater was not an unfair labor strike.

der will be nullified or the administrative procedures will be rendered meaningless unless temporary relief is granted. Angle v. Sacks, supra.

29 U.S.C.A. § 160(j) provides that temporary injunctive relief should be granted if the Court deems the same to be "just and proper." For the reasons stated above, the Court does not feel that temporary injunctive relief is "just and proper" in this case and, therefore, the request for the same should be denied. Counsel for Respondent will prepare an appropriate order for the signature of the Court denying injunctive relief and dismissing the action herein.